**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SUSAN McMAHON, DMD,                    )
                                       )
              Plaintiff,               )          Civil Action No. 16-170
                                       )
       v.                              )          Judge Cathy Bissoon
                                       )
REFRESH DENTAL MANAGEMENT,             )
LLC, et al.,                           )
                                       )
              Defendants.              )
                                       )

## MEMORANDUM AND ORDER

### I.    MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss or alternatively Motion to

Abstain (**Doc. 24**).  For the reasons that follow, Defendants' Motion to Dismiss will be

GRANTED and Motion to Abstain with be DENIED.

### A.    Background

Plaintiff Susan McMahon, DMD, ("Plaintiff" or "Dr. McMahon") brings the instant

action against Refresh Dental Management, LLC ("Refresh Dental"), Professional Dental

Alliance ("PDA"), North American Dental Management, LLC ("North American Dental"),

Andrew Matta, DMD ("Dr. Matta"), and Brittany Davis ("Ms. Davis"), suing Defendants

Refresh Dental, PDA, and North American Dental (collectively "North American Dental

Defendants") for false advertisement and unfair competition under § 43(a) of the Lanham Act,

15 U.S.C. § 1125(a) (Count I); all Defendants for Tortious Interference with Existing and

Prospective Contractual Relations under Pennsylvania Law (Count II);  North American Dental

Defendants for unjust enrichment under Pennsylvania Law (Count III); North American Dental

Defendants for Unfair Competition under Pennsylvania Law (Count IV); all Defendants for

1

Defamation under Pennsylvania law (Count V); North American Dental Defendants for unauthorized use of her name and likeness under 42 Pa. Stat. § 8316 (Count VI); and all Defendants for civil conspiracy (Count VII). Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331 for her claim under Count I and supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1337. Defendants move to dismiss all claims as "inadequately pled" under Federal Rule of Civil Procedure 12(b)(6), and alternatively move to stay and/or dismiss this matter pursuant to the abstention doctrine enunciated in Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800 (1976).

      a.  Factual Background[1]

Dr. McMahon is a practicing dentist, (Doc. 22 ¶ 7), who operated her dental practice at an office located on East Carson Street in Pittsburgh, Pennsylvania ("Carson Street office"). (Doc. 22 ¶ 16). She is one of 350 dentists accredited by the American Academy of Cosmetic Dentistry for the practice of "cosmetic dentistry," which she alleges is a highly specialized form of dentistry and requires excellent proficiency in porcelain veneers, implant restoration, full reconstruction, and cosmetic bonding. (Doc. 22 ¶¶ 7, 8). As a result, she claims that her name "has great commercial value especially in the Pittsburgh area." (Doc. 22 ¶ 97).

Defendant Refresh is an Ohio limited liability company providing dental care at the Carson Street office. (Doc. 22 ¶ 9). Defendant PDA is an Ohio limited liability company that possesses an ownership stake in Refresh Dental and is Refresh Dental's parent company. (Doc. 22 ¶¶ 10, 17). North American Dental provides management services to Refresh and PDA.

---

[1] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 22). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

(Doc. 22 ¶ 18).

In May of 2012, Dr. McMahon entered into an agreement with Refresh Dental by which Refresh Dental purchased Dr. McMahon's dental practice at the Carson Street office and assumed its operation. (Doc. 22 ¶ 16). Dr. McMahon continued to practice dentistry at the Carson Street office, then working for Refresh Dental. (Doc. 22 ¶ 19). In 2013, Dr. McMahon became aware of an alleged negative reputation regarding Refresh Dental's operation of the office, including the use of inadequate or untrained front office staff, (Doc. 22 ¶ 21), and she voiced her concerns at Refresh Dental to both Dr. Chad Wise and Dr. Matta. (Doc. 22 ¶ 22). Dr. Matta treats patients at the Carson Street office, where Ms. Davis is the office manager. (Docs. 22 ¶¶ 9, 22-3). To Dr. McMahon's dismay, Drs. Matta and Wise continued to hire untrained staff. (Doc. 22 ¶¶ 23, 24). Dr. McMahon "continually" voiced further concerns regarding the cost-cutting measures as well as the treatment of certain elderly patients. (Doc. 22 ¶¶ 25, 26). In September of 2015, Defendants terminated Dr. McMahon's employment. (Doc. 22 ¶ 2). After her termination from Refresh Dental, Dr. McMahon began seeing patients in her practice in Moon Township, Pennsylvania ("Moon practice"). (Doc. 22 ¶ 28). Defendants allegedly knew after her termination that Dr. McMahon had opened her own dental practice. (Doc. 22 ¶ 86).

Apparently, after Dr. McMahon was terminated, the North American Dental Defendants continued to schedule appointments as if they were with Dr. McMahon when patients called the office to schedule an appointment with Dr. McMahon. (Doc. 22 ¶ 3). After patients arrived for their appointment with Dr. McMahon, once they were seated in the dental chair, they were informed that Dr. McMahon no longer practices at the Carson Street office. (Doc. 22 ¶ 3). Additionally, patients were told that Dr. McMahon is no longer practicing, that she retired, that she had opened a restaurant, that she left for vacation and never returned, that she left her

patients "high and dry," that she had a criminal Protection from Abuse order against her, and that they did not have Dr. McMahon's contact information. (Doc. 22 ¶¶ 35(c), (d), and (e), 39, 61(a), (b) and (c), 65). Defendants provided this information in response as well as when directly questioned by patients regarding Dr. McMahon. (Doc. 22 ¶ 94(b), (c)). Plaintiff alleges that when Defendants and/or their representatives made these statements they knew or should have known the information was false, misleading, and would cause patients to not search for Dr. McMahon to perform their dental care, (Doc. 22 ¶ 66), they made the statements to give the impression that Dr. McMahon had abandoned the care of her patients, was engaging in criminal activity, was a threat and was not fit to administer dental care, (Doc. 22 ¶ 85, 88), and the false statements were made to retain patients at the Carson Street office who otherwise would have left to receive treatment from Dr. McMahon, (Doc. 22 ¶ 68), resulting in financial gain to Defendants and financial harm to Plaintiff. (Doc. 22 ¶¶ 71, 72).

Specifically, Plaintiff alleges that one patient was informed in the exam room that Dr. McMahon was no longer there, and when the filling put in by another dentist fell out, was told the following day "sorry that Dr. McMahon left her patients high and dry." (Docs. 22 ¶ 99, 22-1). Another patient was specifically told by Dr. Matta on inquiry that Dr. McMahon is "not practicing dentistry anymore. She opened a restaurant." (Docs. 22 ¶ 92; 22-1). Dr. Matta further stated to the patient that Dr. McMahon "doesn't have a practice anymore" and "was getting out of the business." (Doc. 22 ¶ 92).

A sign located right outside the Carson Street office contained the phrase "Esthetic Dentistry Pittsburgh" and with the name "Susan McMahon DMD" listed below and, despite Dr. McMahon's request that it be removed, remained outside the office for one hundred and sixty (160) days, which was after Dr. McMahon instituted the present action. (Docs. 22 ¶¶ 29,

4

47; 22-2).  By letter dated January 22, 2016, patients were informed by Refresh Dental that

Dr. Ginde, DDS, had joined the office, but were not informed therein that Dr. McMahon no

longer practiced there.  (Docs. 22 ¶ 4; 22-3).  Dr. McMahon was still listed as a dental provider

at the Carson Street office and at other Refresh Dental offices on various insurance websites as

of the filing of her Amended Complaint on March 22, 2016.  (Doc. 22 ¶¶ 5, 32).   Dr. Ginde,

who only practiced as the Carson Street office after Dr. McMahon's termination, was added to

certain insurance websites as practicing at the Carson Street office although Dr. McMahon's

name remained listed there as well.  (Doc. 22 ¶ 32).  After her termination, Dr. McMahon's

insurance billing code of "2MCMAH" appeared on a dental treatment plan distributed to a

patient.  (Doc. 22 ¶¶ 31, 48).

     b.  <u>Ohio Action</u>

On October 5, 2015, Defendant PDA filed suit in state court in Mahoning County, Ohio,

at <u>Professional Dental Alliance, LLC v. Susan McMahon</u>, 2015 CV 02415 (Mahoning County,

OH) ("the Ohio action"), based on allegations that Dr. McMahon signed a non-compete

agreement with PDA.  (Doc. 22 at 5 n.1).  Dr. McMahon filed a counterclaim in the Ohio action

regarding PDA's use of the "Esthetic Dentistry Pittsburgh" trademark.  (Doc. 22 at 5 n.1).

PDA's Amended Complaint in the Ohio action asserts claims against Dr. McMahon for:

breach of contract, alleging that Dr. McMahon misappropriated trade secret information, patient

intake forms and records and is violating her non-compete agreement (Count I); violating Ohio's

Uniform Trade Secrets Act by misappropriating confidential information (Count II); conversion

of files, records, and trade secrets (Count III); tortious interference with business relationships by

soliciting patients to cease patronizing PDA and become patients of Dr. McMahon elsewhere

(Count IV); and requesting injunctive relief (Count V).  (Doc. 26-3).  As with Count I of her

Amended Complaint here, Dr. McMahon's counterclaim brought in the Ohio action asserts a violation of the Lanham Act. Notably, however, her claim in the Ohio action relates to PDA's alleged misuse of the "Esthetic Dentistry Pittsburgh" mark. (Doc. 26-2 at 18-19). Plaintiff has asserted in the Ohio action claims: under the Lanham Act (Ohio Count I); for common law trademark infringement (Ohio Count II); for common law unfair competition (Ohio Count III); for violation of Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165 (Ohio Count IV); and seeking injunctive relief therein (Count V), all regarding the use of the mark "Esthetic Dentistry Pittsburgh." (Doc. 26-2).

**B.     Analysis**

     a.  <u>Motion to Abstain under Colorado River</u>

Defendants move the Court to abstain from exercising jurisdiction over Plaintiff's claims, citing the <u>Colorado River</u> doctrine. Defendants argue that abstention under <u>Colorado River</u> is appropriate because: 1) Dr. McMahon has a duplicative Lanham Act claim pending in the Ohio court, (Doc. 26-1 at 19) and a duplicative common law unfair competition claim; 2) the Ohio court is able to address all of her other claims and they may be brought in the Ohio action, (Doc. 26-1 at 19, 20); 3) the "heart" of the dispute in both matters is between PDA and Dr. McMahon (Doc. 26-1 at 20); and 4) Dr. McMahon's suit against "nominal Defendants" here is "a transparent and ineffective tactic to attempt to avoid <u>Colorado River</u> abstention by this Court," and this action was filed "in an effort to subvert the Ohio Court's jurisdiction." (Doc. 26-1 at 19-20).[2] Dr. McMahon responds that: 1) there are no exceptional circumstances to justify

---

[2] Defendants urge the Court to first grant its motion to dismiss and then address abstention if it is inclined to rule against Defendants on the Rule 12(b)(6) motion. (Doc. 26-1 at 19). If, however, the Court should abstain, it should make that determination before ruling on the dismissal for failure to state a claim. <u>See</u> <u>Simmsparris v. Neary</u>, 2011 WL 2470475, at *2 (D.N.J. June 20, 2011) (in general, "abstention doctrines, . . . should be considered before a determination is made

abstention; 2) the actions are not parallel because there is no substantial identity of parties in the actions and the claims pled are not substantially identical; and 3) the six factor test for actions found to be parallel weighs against abstention. (Doc. 28 at 29-30). In addressing the six factor test discussed more fully *infra*, Dr. McMahon argues that none of the factors weigh in favor of abstention. The Court agrees with Dr. McMahon as indicated *infra*.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Colorado River provides:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.

424 U.S. at 813 (internal citations and quotations omitted). "The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a *res judicata* or collateral estoppel effect on the other action.'" CSX Transp. Inc. v. Apex Directional Drilling, LLC, No. CV 14-290E, 2015 WL 8784148, at *2 (W.D. Pa. Dec. 15, 2015) (quoting Ryan v. Johnson, 115 F.3d 193, 195 (3d Cir. 1997)).

In considering Colorado River abstention, the Court first determines whether the movant has demonstrated "that the federal and state proceedings are 'parallel.'" CSX Transp. Inc., 2015 WL 8784148, at *2 (citing Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer, 629 F. App'x 348 (3d Cir. 2015)). "If they are not, then the district court lacks the power to

on the merits") (citing U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383 (3d Cir. 2002)).

abstain." Ryan, 115 F.3d at 196. Parallel cases are ones that "*involve the same parties* and

substantially identical claims, raising nearly identical allegations and issues." Yang v. Tsui, 416

F.3d 199, 204 n.5 (3d Cir. 2005) (internal quotation and citation omitted) (emphasis added). A

court, however, should not engage in speculation when determining whether the actions are

parallel. Ryan, 115 F.3d at 196. Where the court determines that the proceedings are parallel, it

then applies the six factor test in determining whether abstention is warranted. Spring City Corp.

v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999).

> The relevant factors include: (1) (in an *in rem* case,) which court first assumed
> jurisdiction over (the) property; (2) the inconvenience of the federal forum; (3) the
> desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction
> was obtained; (5) whether federal or state law controls; and (6) whether the state
> court will adequately protect the interests of the parties. In reviewing these
> factors, the Court must bear[] in mind that it should place a thumb on the scales in
> favor of granting jurisdiction.

CSX Transp. Inc., 2015 WL 8784148, at *2 (internal quotations and citations omitted); Moses H.

Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983) (The balancing is

"heavily weighted in favor of the exercise of jurisdiction."). "No one factor is determinative; a

carefully considered judgment taking into account both the obligation to exercise jurisdiction and

the combination of factors counseling against that exercise is required." Colorado River, 424

U.S. at 818–19.

Defendants assert that although only Plaintiff and Defendant PDA are involved in the

Ohio action, the cases are parallel because of the nature of the suit in Ohio, because the

additional Defendants here were somehow added as a subterfuge to avoid abstention, and

because Plaintiff purportedly *could* bring the claims alleged in this case in the Ohio action.

(Doc. 26 at 20-21). First, abstention under Colorado River is not the ordinary result, but results

only from a decision by a federal court to abstain based on extraordinary circumstances. Second,

the nature of the allegations against the individual Defendants, Dr. Matta and Ms. Davis, differs significantly from the nature of the allegations in the Ohio action. In the Ohio action, the litigation centers on the use of the mark "Esthetic Dentistry Pittsburgh." Although Plaintiff has based her claims, in part, on the use of the sign that contains both the mark "Esthetic Dentistry Pittsburgh" and her name, her focus here regarding the sign is on the continued display of her name on the sign. She also has brought claims here based on the conduct of the additional Defendants not having to do with the mark "Esthetic Dentistry." To be sure, there is some overlap in the actions, however, "some" overlap is not the same as being parallel, and parallel actions are necessary but not sufficient for Colorado River abstention.

The Court must be mindful that abstention is "extraordinary," and "the order to the parties to repair to the state court [must] clearly serve an important countervailing interest." Colorado River, 424 U.S. at 813 (citations omitted). Defendants' arguments ignore the extraordinary nature of Colorado River abstention. "The duplicative nature of the filings notwithstanding, the Court of Appeals for the Third Circuit has established that the pendency of an action in state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction. Abstention must be justified by more than the desire to avoid duplicative litigation." CSX Trans., Inc., 2015 WL 8784148, at * 1 (internal quotations and citations omitted). The focus of Defendants' motion to abstain here is centered squarely on PDA's desire to avoid duplicative litigation. While, understandably, Defendant PDA would like to fight its battle with Plaintiff in the Ohio action on the turf it selected, the state of affairs regarding these actions simply are such that both actions should continue until there is a judgment in one such as may create a *res judicata* or collateral estoppel effect on the other action. Ryan, 115 F.3d at 195. There is a *substantial* lack of identity of parties. The lack of identical parties in the state and

federal action and the nature of the allegations in each render these actions not parallel as required.  See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 306 (3d Cir. 2006) (cases are "parallel so as to justify abstention under Colorado River when they involve the same parties"); Timoney v. Upper Merion Tp., 66 F. App'x 403, 405 (3d Cir. 2003) (citing Trent v. Dial Med. of Fla., Inc., 33 F.3d 217, 223 (3d Cir. 1994) ("Cases are parallel if they involve the same parties and 'substantially identical' claims, raising 'nearly identical allegations and issues'")).

In addition, as observed in Harris v. Vitran Exp., Inc., No. CIV.A. 14-0704, 2014 WL 5795687, at *2–5 (W.D. Pa. Oct. 15, 2014), report and recommendation adopted, No. CIV.A. 14-0704, 2014 WL 5795727 (W.D. Pa. Nov. 6, 2014):

> Given the rarity with which federal courts decline to exercise their jurisdiction because of the existence of parallel proceedings in state court, it is no surprise to find this case does not present "extraordinary circumstances" that warrant or permit abstention or stay. To the contrary, the circumstances and procedural postures of the state and federal actions herein present a common and ordinary scenario, and both may proceed simultaneously.

2014 WL 5795687, at *2.

In addition to the cases not being parallel, the threshold requirement—consideration of the factors under a Colorado River abstention analysis—counsels strongly against abstention. Defendants assert that the second factor is neutral and all of the other factors weigh in favor of abstention or dismissal under Colorado River.  Defendants attempt to characterize this case in terms of property rights, arguing the mark is property regarding which the Ohio court has initially ruled.  They argue that the Ohio court has assumed jurisdiction over certain property in dispute between the parties, including confidential patient information, trade secrets and the right to use the name "Esthetic Dentistry."  The first Colorado River factor relates to an *in rem* action and considers which court first assumed jurisdiction over the property in such an action.  The

Ohio court has made a preliminary ruling regarding the mark as pointed out by Defendants, but neither this action nor the Ohio action is an action *in rem,* nor do they present a dispute regarding ownership of the mark "Esthetic Dentistry." Thus, the fact that the Ohio action was instituted first and the Ohio court has ruled on preliminary injunction does not support abstention under factor one.

The federal forum in Pittsburgh, Pennsylvania cannot be said to be an "inconvenient" forum as the allegations here center on conduct taking place in Pittsburgh, Pennsylvania at the location of the business conducted by Defendants—thus, the locus of the action is within this district. Factor two weighs against abstention.

As to the third factor, avoidance of piecemeal litigation, Defendants argue that "a stay or dismissal of this action to allow the same issues to be litigated in the Ohio Court avoids piecemeal litigation." (Doc. 26-1 at 21). Defendants' argument goes too far, as every action argued under Colorado River presents the likelihood of piecemeal litigation. For this factor to support abstention, it must present more than the "mere possibility of piecemeal litigation . . ."; rather, there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review." Ryan, 115 F.3d at 198 (citing Colorado River, 424 U.S. at 819 ("The clear federal policy evinced by (the McCarran Amendment) is the avoidance of piecemeal adjudication of water rights in a river system.")); McMurray v. De Vink, 27 F. App'x 88, 92–93 (3d Cir.2002) (facing garden-variety state law issues do not justify abstention). Defendants do not argue that there is any strongly articulated policy evincing the desire of Congress to avoid piecemeal litigation in the context of the Lanham Act. As with factor two, factor three militates against abstention.

Although Defendant PDA instituted the Ohio action approximately four months prior to

Plaintiff instituted this federal action, and the Ohio state court has made some rulings on preliminary matters (as has the federal court in this action), the Ohio action is not substantially further along than this action. Furthermore, a review of the public docket in the Ohio action reveals that that case recently has been stayed pending enforceable arbitration.[3] Professional Dental Alliance, LLC v. Susan McMahon, 2015 CV 02415 (Mahoning County, OH) (11/3/16 Docket Entry). Thus, factor four militates against abstention.

Considering whether federal or state law controls this action, the Lanham Act claim is the sole federal claim here and the remaining claims are brought by Plaintiff under Pennsylvania law. This Court is capable of deciding the Pennsylvania claims applying Pennsylvania law pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367(a); De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir.2003). More importantly, the Ohio court certainly would have no greater ability to address issues of Pennsylvania law than would this Court. Thus, factor five weighs against abstention.

The sixth and final factor—whether the state court will adequately protect the parties' interests, as recognized by Ryan—is only relevant where the state forum is somehow inadequate. "(T)he mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction. Instead, this factor is normally relevant when the state forum is inadequate." 115 F.3d at 200. Thus, notwithstanding the adequacy of the state forum here, this sixth and final factor does not weigh in favor of abstention.

In sum, no factor weighs affirmatively in favor of abstention in this case, and Defendants

---

[3] That the parties have not raised the arbitration clause as enforceable here further bolsters the conclusion that this action is not a parallel action with the Ohio action within the meaning of Colorado River such that the Court should abstain in this present action.

have not demonstrated the "exceptional circumstances" necessary to justify abstention.  As such, the Court will not stay, dismiss or in any way abstain under <u>Colorado River</u> and Defendants' motion is denied in that respect.

    b.  <u>Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).[4]

    i.  <u>Lanham Act Claim (Count I)</u>

Plaintiff sues the North American Dental Defendants under Count I for violation of the Lanham Act.  The Lanham Act provides:

**(a) Civil action**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

---

[4] Plaintiff attached to her sur-reply the affidavits of two individuals, Barry Hill and Karrah Petruska, and indicated that there is "new evidence" that "Defendants' wrongful conduct in this District giving rise to the Amended Complaint is still ongoing." (Doc. 32-1 at 3, 5, 8). Defendants argue that these affidavits do not constitute averments in Plaintiff's Amended Complaint, that Plaintiff has not filed any motion for leave to amend under Federal Rule of Civil Procedure 15, and the affidavits should not be considered on the present motion to dismiss. (Doc. 26 at 2-3).  The Court agrees.  Accordingly, the Court will consider the allegations actually contained within in the Amended Complaint to determine its sufficiency under Rule 12(b)(6), not factual allegations in affidavits attached to a sur-reply brief in opposition to a motion to dismiss, or even in documents attached to an initial brief, reply brief or sur-sur reply brief in support.  <u>In re Asbestos Products Liability Litigation (No. VI)</u>, 822 F.3d 125, 133 (3d Cir. 2016); <u>see also</u> <u>Byrd v. Aaron's, Inc.</u>, 14 F. Supp. 3d 667 (W.D. Pa. 2014) ("[T]his Court must limit its review on a motion to dismiss to the allegations of the complaint.").

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

A claim under § 1125(a)(1)(B) deals with misrepresentation by use of a name in commercial advertising or promotion and a claim under § 1125(a)(1)(A) deals with use in commerce of a name that creates confusion, mistake or deceit regarding affiliation. Premier Comp. Solutions, LLC v. Penn Nat. Ins. Co., 2012 WL 1038818, at *5 (W.D. Pa. Mar. 28, 2012). Both types of claim, however, require the use in commerce, which includes "intrastate activity— *if that activity substantially affects interstate commerce.*" Id. (emphasis added)(citing Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 165 (3d Cir. 2001). The 1989 Amendments to the Lanham Act shifted the focus from the goods or services being used in interstate commerce to place the emphasis on the aggrieving conduct—the false or misleading designation or advertisement being used in interstate commerce. Premier, 2012 WL 1038818, at *5 (citing 5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 27:47, at 27-100 (4th ed. 1999)). Thus, the claimed use by Defendants of Dr. McMahon's name to mislead or to give a false impression of the services offered must have been used in interstate commerce or had a substantial effect on it.

The theory of Plaintiff's Lanham Act claim against the National American Dental Defendants is that the outside sign including her name remained at the Carson Street office for approximately 160 days after she was terminated, that patients were not informed she no longer

worked at the Carson Street office, that her billing code appeared on a treatment plan generated after she was terminated, that her name remained on third-party insurance websites after her departure, and that patients when at the Carson Street office were told she was no longer practicing dentistry, thus, constituting false or misleading representations about services after her termination to be provided by the National American Dental Defendants at the Carson Street office and/or to be provided by Plaintiff elsewhere.

"One of the main purposes of section 43 of the Lanham Act is to protect persons engaged in interstate commerce against unfair competition caused by false or misleading representations or advertising about goods, services, or commercial activities." Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 357 (3d Cir. 1997) (citing 15 U.S.C. § 1125(a)(1)), aff'd, 527 U.S. 666 (1999). Dr. McMahon's Lanham Act claim requires proof of the following: 1) that the National American Dental Defendants made false and/or misleading statements as to their product or services or as to her product or services; 2) that National American Dental Defendants' statements caused actual deception or "at least the tendency to deceive a substantial portion of the attended audience;" 3) that "the deception is material in that it is likely to influence purchasing decisions;" 4) that the National American Dental Defendants caused the false and/or misleading statement to enter interstate commerce or that the statement substantially affected interstate commerce; and 5) that National American Dental Defendants' conduct caused injury to or created the likelihood of injury to Dr. McMahon in declining sales or loss of good will. Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, 774 F.3d 192, 198 (3d Cir. 2014); Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.d 241, 248 (3d Cir. 2011); Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, (3d Cir. 2001); Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1348 (Fed Cir. 1999). Plaintiff must also show in a case

alleging false statements actionable under 15 U.S.C. § 1125(a)(1)(B) that the false statement constitutes commercial advertising or promotion.  See Premier, 2012 WL 1038818, at * 7.

Defendants argue that Plaintiff's Lanham Act claim fails because it contains only generic assertions against them collectively and because it contains no facts as to the required  interstate commerce requirement—the showing that the National American Dental Defendants caused the false and/or misleading statement to enter interstate commerce or that the statement substantially affected interstate commerce.  (Doc. 26 at 14-15).   It should be noted that the interstate commerce requirement is broadly construed, U.S. Healthcare, Inc. v. Blue Cross, 898 F.2d 914, 922 (3d Cir. 1990), and "Congress's authority under the interstate commerce clause extends even to purely intrastate activity *if that activity substantially affects interstate commerce*."  Highmark, Inc., 276 F.3d at 165; Premier, 2012 WL 1038818, at *5 (emphasis added).  Nevertheless, facts to support a finding as to a substantial effect on interstate commerce or that the misleading statements entered interstate commerce are still required.  Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt of SW Floriday, LLC, 578 F. App'x 959, 962 (11th Cir. 2014).

In Highmark, the nexus with interstate commerce was met with an advertisement in a newspaper with an interstate distribution.  276 F.3d at 165.  In NTB Marble, Inc. v. AAA Hellenic Marble, Inc., 799 F.Supp.2d 446, 451 (E.D. Pa. 2011), the court found the interstate commerce element was met where a press release and various statements were disseminated through the internet.  However, in Premier, 2012 WL 1038818, at *6, false oral statements made locally to five individuals and also repeated in an email sent to the Defendant's employees did not suffice for interstate commerce purposes.

The court in Premier observed:

Based on this record, the intrastate activity of sending one email to defendants' employees located within Pennsylvania and the oral dissemination of false

16

> information contained in that email to five other persons located in Pennsylvania
> with no other showing of an (e)ffect on interstate commerce by that intrastate
> activity is insufficient to meet the "uses in commerce" requirement. Plaintiff
> needed to adduce some evidence to show that the misrepresentations in issue were
> made in interstate commerce or, if purely made intrastate, affected interstate
> commerce. Plaintiff must adduce evidence of more than general information
> about the nature of plaintiff's interstate business.

Premier, 2012 WL 1038818, at *6. The court indicated that the commercial advertising

requirement also was not met by the email to employees and the oral statement made to five

people as it did not constitute "dissemination to the relevant purchasing public, *i.e.*, () sufficient

to constitute commercial promotion." 2012 WL 1038818, at * 9-10; see also Fashion Boutique

of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 54 (2d Cir. 2002). Similarly, in Fashion

Boutique, the Court of Appeals for the Second Circuit found twenty-seven oral statements

insufficient to show "commercial advertising or promotion" under the Lanham Act where the

relevant marketplace included thousands of customers. 314 F.3d at 58.

The allegations here by Dr. McMahon are that a single sign, on which her name

appeared, physically remained outside the Carson Street office for a time after she was

terminated, that allegedly false oral statements were made to patients in the dental chair inside

the Cason Street office, that certain third-party websites continued to list Dr. McMahon as

practicing at the Carson Street office, and that after she was terminated, her insurance billing

code appeared on a patient treatment plan. Thus, the only affirmative acts alleged regarding the

conduct of Defendants are the inclusion of a billing code on a single patient plan given to the

patient and the statements made to some patients inside the Carson Street office.

Although Plaintiff does make the allegation that the Carson Street office generally

offered its services on an interstate basis appears in the Amended Complaint, (Doc. 22 at ¶ 20),

the allegations underlying her Lanham Act claim do not support any effect on interstate

commerce or that the false statements were made in interstate commerce. Critically, the only

disseminated publication, a letter to patients, is referenced by Dr. McMahon only for *what was not mentioned in it*—her name or that she no longer practiced at the Carson Street office.

Regarding third party insurance websites, the allegation is only that the information remained posted there and not that the Defendants had control regarding the websites or that Dr. McMahon was unable to remove her information from those sites due to any conduct undertaken by Defendants after her termination. Cf. Covertech Fabricating, Inc. v. TVM Bldg. Products, Inc., Civ. A. 3:13-150, 2015 WL 6743948, at *6 (W.D. Pa. Nov. 4, 2015) (finding defendant liable for placement of plaintiff's mark on third-party website regarding which defendant exercise control and influence). The oral statement to patients at the office and the inclusion of the billing code on a treatment plan giving to the patient at the office likewise are not any dissemination in interstate commerce.

Plaintiff relies on Lewis v. Marriott Intern., Inc., 527 F.Supp.2d 422, 425 (E.D. Pa. 2007), to argue that the "uses in commerce" requirement is met here because she has patients from Pennsylvania and surrounding states that would be interested in her services. Lewis, however, is distinguishable as the defendant there affirmatively used the plaintiff's name in promotional and marketing materials, specifically representing that its wedding packages are catered by "our Chef Carl Lewis." Premier recognized this distinction as well. 2012 WL 1038818, at * 7 (name used in materials in Lewis and no materials marketing the services in Premier were used). Even considering Plaintiff's allegations that patients called to make appointments with Dr. McMahon, the allegations are not such that Defendants affirmatively used Dr. McMahon's name to market and solicit patients or appointments or even that a patient from out of state called to make an appointment with Dr. McMahon after she no longer worked at the Carson Street office and was affirmatively told that Dr. McMahon would treat that patient. Plaintiffs' allegations regarding

what she claims are "false or misleading" statements made in connection with appointment scheduling also do not identify the individual who made these statements either on their own or on behalf of any of the Defendants.

Under the facts as alleged by Dr. McMahon, the interstate commerce requirement simply is not met. As urged by Defendants, the Amended Complaint does not even contain the phrase "interstate commerce" although it does state that the dental office at Cason Street "offers its services on an interstate basis." (Doc. 22 ¶ 2); cf. In re Asbestos Products Liablity Litigation (No. VI), 822 F.3d 125, 133 (district court improperly considered allegations outside complaint where allegations regarding system of pipes connecting railcars to the locomotive was not fairly within complaint as complaint did not even contain the word "locomotive."). The offending conduct occurring locally and without a nexus to any effect on interstate commerce, much less a substantial effect, is insufficient. Arrow Rock Int'l, Inc. v. Dex Media, Inc., No. 1:05CV00339, 2006 WL 1793554, * 3 (D. Idaho June 28, 2006); Ultimate Video Plus, Inc. v. Perrine Elecs., Inc., Civ. A. No. 95CV1325, 1996 WL 481542, at *4 (N.D. N.Y. Aug. 22, 1996). Plaintiff's failure to allege facts that would show the requisite effect on interstate commerce or that the alleged false statement was disseminated in interstate commerce requires dismissal of the Lanham Act claim.

Accordingly, based on the foregoing, Plaintiff's Lanham Act claim under Count I will be dismissed without prejudice to Plaintiff's filing of an amended complaint, if appropriate, setting forth the nexus of the conduct alleged to any effect on interstate commerce.

ii. Supplemental Jurisdiction

Because the federal claim on which federal jurisdiction rests is dismissed, this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Dr.

McMahon's state law claims in Counts II through VII.  See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."), superseded by statute in, 28 U.S.C. § 1367(c)(3); see also Angeloni v. Diocese of Scranton, 135 F.App'x 510, 514 (3d Cir. 2005).  This case is procedurally in the early stages.  In this context, with the federal claim being dismissed, considerations of judicial economy, convenience, fairness and comity, do not weigh in favor of supplemental jurisdiction regarding the state law claims, and therefore, supplemental jurisdiction over these claims should be declined and the state law claims should be dismissed without prejudice.  Silverstein v. Percudani, 207 F. App'x 238, 240 (3d Cir. 2006) (citing Bright v. Westmoreland County, 443 F.3d 276, 286 (3d Cir. 2006) (dismissal appropriate unless considerations affirmatively justify exercising supplemental jurisdiction)).

## II.    ORDER

Based on the foregoing, Defendants' motion to abstain under Colorado River is DENIED, and Defendants' motion to dismiss is GRANTED.  Count I of the Amended Complaint, asserting a federal cause of action under the Lanham Act, is hereby DISMISSED without prejudice.  Counts II through VII of the Amended Complaint, asserting state law causes of action, are hereby DISMISSED without prejudice to Plaintiff reasserting these claims in a Second Amended Complaint containing a viable federal claim, or in state court if no viable federal claim exists in this Court.

If Plaintiff wishes to file a Second Amended Complaint, she may do so on or before December 27, 2016.  If no amended complaint is filed by that date, the Court will dismiss this

case, with prejudice,[5] consistent with this Order. The Court reminds Plaintiff that any amended

pleading must comport with the requirements of Federal Rule of Civil Procedure 11. [6]


December 13, 2016                                    s/Cathy Bissoon
                                                    Cathy Bissoon
                                                    United States District Judge


cc:     via electronic filing

        Counsel of record

---

[5] Although nothing in this Order prejudices Plaintiff's ability to pursue her state law claims in state court.

[6] Given that Plaintiff already once has amended her pleadings, she must be prepared to make last, best efforts to state viable claim(s), as the Court will not afford further opportunity for amendment. See Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming the Court's dismissal of a plaintiff's second amended complaint with prejudice, where the Court found that "[i]t [] would be inequitable to require Defendant, who already once has exhaustively and successfully defended Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments").